IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KASEEM ALI-X,<br><br>           Plaintiff<br><br>   v.<br><br>GEORGE HAYMAN, et al.,<br><br>           Defendants | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 10-4666 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Kaseem Ali-X # 260516
South Woods State Prison
215 Burlington Road South
Bridgeton, New Jersey 08302
    Pro Se

Jeffrey S. Chiesa
ATTORNEY GENERAL OF NEW JERSEY
By:  Daniel Michael Vannella
     Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for the Defendants

**SIMANDLE**, Chief Judge:

   I.   **INTRODUCTION**

   This matter comes before the Court on Defendant George Hayman's motion to dismiss himself from Plaintiff Kaseem Ali-X's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Item 57.] Plaintiff, who initiated this action pursuant to 42 U.S.C. § 1983, filed no opposition to the instant motion. For the reasons discussed

herein, the Court will dismiss Defendant Hayman from the present action with prejudice.

## II.  BACKGROUND

### A. Plaintiff's Allegations

Plaintiff Kaseem Ali-X ("Plaintiff") is a prisoner incarcerated within the New Jersey Department of Corrections ("NJDOC") at the South Woods State Prison ("SWSP").  On September 13, 2010, Plaintiff filed his original complaint.  [Docket Item 1.]  Plaintiff has since filed two amended complaints, the most recent of which was filed on March 16, 2012.  [Docket Item 54.]  Plaintiff alleges that then NJDOC Commissioner George Hayman ("Commissioner Hayman"), inter alia, violated his Eighth Amendment rights by failing to protect Plaintiff from second-hand smoke produced by his cellmates and committed the state tort of "negligence [sic] failure to provide protection." (Pl.'s Sec. Am. Compl. ¶ 1.)

In analyzing this motion to dismiss pursuant to Rule 12(b)(6), the Court will accept as true all of Plaintiff's factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plaintiff is "medically diagnosed as having high blood-pressure . . . and is prescribed medications" for the same.  (Pl.'s Sec. Am. Compl. ¶ 16.) As a result, Plaintiff is very sensitive to tobacco smoke and exposure to it causes him to suffer elevated blood pressure, nausea, migraines,

2

breathing problems, dizziness, and chest pains. (Id. at ¶ 16.) Plaintiff further contends that long-term exposure to environmental tobacco smoke[1] (ETS) puts him at risk for future health problems including heart attacks, strokes, or lung cancer, and that his exposure to these risks constitutes cruel and unusual punishment in violation of the Eight Amendment. (Id. at ¶¶ 16, 74.)

Plaintiff alleges that he was placed in a series of cell assignments with habitual smokers and that he was met with deliberate indifference from those officers to whom he presented his medical need for a non-smoking cellmate. (Id. at 6-14.) In some instances, it even appears that Plaintiff was specifically assigned a habitually smoking cellmate as a result of his requests to be assigned to a non-smoking cellmate.[2] Plaintiff further alleges deliberate indifference on the part of those supervisors to whom he submitted Inmate Remedy System Forms and other communications concerning the alleged ongoing violations of his constitutional rights. (Id. at

---

[1] Environmental Tobacco Smoke (ETS) is more commonly known as "second hand smoke."

[2] Plaintiff alleges that "On or about 11-5-09 Plaintiff was moved to 4-2 Left housing unit, for unrelated reason, and informed first shift housing Officer Abbott he is a non-smoker with high blood-pressure . . . and can't be around smoke and requested to be housed with a non-smoker. Officer Abbott did not move the Plaintiff in the open cell which was for the Plaintiff but moved the inmate from (first name unknown) Wheeler cell to the opened cell and placed the Plaintiff in the cell with Wheeler." (Pl.'s Sec. Am. Compl. ¶¶ 40-41.) Plaintiff later alleges that Wheeler was a habitual smoker who would blow smoke in Plaintiff's face in an attempt to start a fight. (Id. at ¶ 44.)

7-14.)

To summarize, Plaintiff alleges a string of interactions with Corrections Officers and supervisors who ignored and disregarded his medical needs and thus his constitutional rights. As a result of the NJDOC's failure to grant Plaintiff the requested accommodations, Plaintiff alleges he has suffered mental anguish, emotional distress, and physical pains and hardships. (Id. at ¶ 69.)

**B. Procedural Background**

Plaintiff's complaint was submitted to this Court on September 13, 2010 with an application to proceed in forma pauperis, which was approved by this Court on November 9, 2010. [Docket Items 1-3.] Plaintiff's complaint named as defendants Mr. George Hayman, Mr. Robert Paterson, Ms. Karen Balicki, Mr. Antoine Jester, Mr. Lawrence Faucett, Mr. Bryan Abbott, and Mr. Charles Saul, all administrators or employees of the New Jersey Department of Corrections. (Pl.'s Sec. Am. Compl. ¶¶ 3-9.) During the time period relevant to this lawsuit Defendant George Hayman was the Commissioner of the NJDOC, Defendant Robert Paterson was the Director of the Division of Operations of the NJDOC, Defendant Karen Balicki was the Administrator of SWSP, Defendant Antoine Jester was a Correctional Sergeant at SWSP, and Defendants Lawrence Fawcett, Bryan Abbott, and Charles Saul were Correctional Officers at SWSP. (Id.)

On December 10, 2010 Plaintiff filed a motion to amend, which

was approved on May 24, 2011.  [Docket Items 4, 8.]  On October 16, 2011 Defendant Hayman filed his first motion to dismiss pursuant to 12(b)(6), alleging many of the same infirmities contained in his present motion.  [Docket Item 35.]  On January 10, 2012, prior to the Court's consideration of Defendant Hayman's motion, Plaintiff filed his second motion to amend the complaint.  [Docket Item 48.]  On March 16, 2012 the Court granted Plaintiff's motion to amend and filed Plaintiff's second amended complaint.  [Docket Item 54.]  As a result, on March 21, 2012 the Court denied as moot Defendant Hayman's first motion to dismiss.  [Docket Item 56.]  Subsequently, Defendant Hayman filed the present motion to dismiss on March 31, 2012.  [Docket Item 57.]

### III. ANALYSIS

#### A. Standard

Under Fed. R. Civ. P. 8(a)(1), a party's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient to at least suggest a basis for liability.  While a plaintiff need not provide detailed factual allegations, he must provide the grounds of his entitlement to relief with more than labels, conclusions, and a formulaic recitation of the elements of his cause of action.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although the Court must assume the truth of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must contain enough factual allegations to raise the right to relief above the speculative level. Twombly, 550 U.S. at 555. It is not necessary for a plaintiff to show the probability of his allegations, but a plaintiff must at a minimum plead sufficient factual matter as to demonstrate the plausibility of the claims as opposed to the mere possibility of the claims. See Id. at 577.

Within the Third Circuit,

> [w]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged n the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." . . . This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009)(citations omitted).

The Court is mindful, however, that Plaintiff is proceeding pro se and that "however inartfully pleaded," a pro se complaint is "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551

U.S. 89, 93-94 (2007); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").

### B. Individual Liability under 42 U.S.C. § 1983

Plaintiff's claim against Commissioner Hayman arises under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable for redress . . .

42 U.S.C. § 1983 (1996). Plaintiff sues the Defendants, including Commissioner Hayman, in their individual capacities. (Pl.'s Sec. Am. Compl. 4.) For a plaintiff to establish personal liability in a § 1983 action, he must be able to show that the official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (referencing Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974)).

Importantly, the Plaintiff must show that Commissioner Hayman had personal involvement in the alleged wrongdoing since liability under § 1983 cannot be predicated solely on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981). Section 1983 does not allow vicarious liability against supervisors for the actions of their employees. See, e.g., Iqbal, 556 U.S. at 676

(recognizing that vicarious liability is inapplicable to § 1983 suits); Monell, 436 U.S. at 692 (analyzing the statutory history and language of § 1983 and explaining why respondeat superior liability is not allowed).

In Sample v. Diecks, the Third Circuit Court of Appeals explained:

> [I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference.

Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

A defendant's personal involvement in causing a constitutional harm can be shown through "allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. A Plaintiff must portray "specific conduct by state officials which violates some constitutional right." Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).

Within the prison context, a violation of the Eight Amendment based on neglect for a prisoner's medical needs occurs when (1) a medical need is serious and (2) the acts or omissions by prison officials demonstrate "deliberate indifference" to the inmate's health or safety. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The deliberate indifference standard has been

clarified by the Supreme Court as meaning the official must actually know of and disregard an excessive risk to the health of the inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 829 (1994).

Thus, it is not enough for Plaintiff to allege that Commissioner Hayman was responsible for the alleged constitutional violations through his ultimate supervisory role over the employees with which Plaintiff interacted. Rather, Plaintiff must allege specifically that Commissioner Hayman himself knew of Plaintiff's alleged unconstitutional treatment and participated in it by knowing acquiescence in Plaintiff's assignment to a smoking environment in violation of Plaintiff's constitutional rights.

### C. Plaintiff's Pleadings against George Hayman are Insufficient

For Plaintiff's claim against Commissioner Hayman to survive, Plaintiff must allege Commissioner Hayman had personal involvement in the violation of Plaintiff's rights.

At this stage in the case, the Court must accept as true Plaintiff's allegations that he has a serious medical need and that his exposure to cigarette smoke is deleterious to his health. The only question before the Court, then, is whether the Complaint alleges Commissioner Hayman had actual knowledge of Plaintiff's medical needs and whether, through act or omission, he allowed Plaintiff's unconstitutional treatment to continue.

Though Plaintiff arrived at SWSP in December 2008, he did not

attempt to contact Commissioner Hayman until December 2009.  (Pl.'s Sec. Am. Compl. ¶ 58.)  Plaintiff alleges that "[a]fter receiving correspondences from Robert Paterson and Karen Vanselous Plaintiff began to realize the purposeful neglect of resolving his complaints and began to notify the Commissioner of the NJDOC, George Hayman, of their failure to assist."  (Id.)  In Count 65, Plaintiff further alleges "George Hayman, Commissioner of NJDOC has failed to remedy Plaintiff's complaints of Karen Balicki, Robert Paterson, Karen Vanselous refusal to remedy complaints."  (Id. at ¶ 65.)  On February 25, 2010, Plaintiff also filed a Notice of Claim with the Bureau of Risk Management, with a copy forwarded to Commissioner Hayman.  (Id. at ¶ 66.)  These three allegations constitute the whole of those directly naming George Hayman within the factual statements of Plaintiff's complaint.

Plaintiff makes three distinct § 1983 claims against George Hayman alleging violations of the Eighth Amendment to the United States Constitution.  (Id. at 15.)  Plaintiff alleges that George Hayman was deliberately indifferent to Plaintiff's safety and well being (by allowing his exposure to ETS)[3], that he was deliberately

---

[3] "[T]he failure of Defendant[] George Hayman . . . to act reasonably to protect the Plaintiff from known unreasonable hazardous living conditions of inhaling the environmental tobacco smoke (ets) from his cellmate constituted deliberate indifference to his safety and well-being depriving him of his right to be protected from known risk of current harms of future under the Eight Amendment to the United States Constitution." [sic] (Id. at ¶ 70)

10

indifferent to Plaintiff's medical needs[4], and that these acts constituted knowing and wanton infliction of pain and harm.[5]

Plaintiff's pleadings do not demonstrate the plausibility of Commissioner Hayman's deliberate indifference to the infringement of Plaintiff's constitutional rights.[6] Plaintiff cites two mechanisms by which Commissioner Hayman knew (or should have known) of Plaintiff's complaints: the fact Plaintiff notified[7] him of Robert Paterson and Karen Vanselous' failure to assist him and the fact he

---

[4] [T]he failure of Defendant[] George Hayman . . . to act reasonable to take steps to ensure the Plaintiff received the needed relief from ets, despite their knowledge of Plaintiff's serious medical needs, constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eight Amendment to the United States Constitution." [sic] (Id. at ¶ 72.)

[5] "[H]aving knowledge of the Plaintiff's complaints of his medical condition and exposure to ets the failure of Defendant[] George Hayman . . . to intervene to prevent the known unnecessary and wanton infliction of current pain and harm or serious risk of future pain or harm being involuntarily imposed upon the Plaintiff as his serious medical condition was callously disregarded and he was deprived a shelter which does not cause degeneration or threaten his mental and physical well-being from the known unreasonable hazardous living conditions of being forced to constantly inhale the poisonous chemicals from ets permeated in the air having poor ventilation constituted deliberate indifference in violation of the Eight Amendment to the United States Constitution in part or totality." [sic] (Id. at ¶ 74.)

[6] The Court rejects the Moving Defendant's characterization of Plaintiff's Second Amended Complaint as relying on a theory of respondeat superior liability. The Court finds it clear, from Plaintiff's pleadings, that the alleged § 1983 violation is based on Commissioner Hayman's failure to respond to Plaintiff's complaints, and not his supervisory position over the co-named Defendants.

[7] Plaintiff does not describe the method by which he "began to notify" the Commissioner of his complaints, but given Plaintiff's imprisonment the Court assumes it was by written correspondence.

was forwarded a copy of Plaintiff's February 25, 2010 Notice of Claim.

Plaintiff does not allege that Commissioner Hayman was present at SWSP during the time period in question, nor that he was involved in the assignment or re-assignment of Plaintiff to SWSP or to any potential living area therein. Commissioner Hayman cannot be liable for his lack of response to Plaintiff's communications alone, as "[a] 'prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action.  The law is well-settled that there is no constitutional right to a grievance procedure.'" Allen v. Passaic Cnty. Jail, No. 09-0408, 2009 WL 4591206 at *8 (E.D. Pa. Dec. 4, 2009)(quoting Spencer v. Kelchner, No. 3:06-CV-1099, 2007 WL 88084 at *7 (M.D. Pa. Jan. 9, 2007)); see also Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138 (1977); Hoover v. Watson, 886 F.Supp. 410, 418 (D.Del. 1995), aff'd 74 F.3d 1226 (3d Cir. 1995).

It is not enough, however, for Plaintiff to allege that he sent communications to Commissioner Hayman.  To show deliberate indifference, Plaintiff must be able to show that Commissioner Hayman was actually aware of the health hazard set forth in his complaints. This would require, at a minimum, that Plaintiff allege that Commissioner Hayman had received and read his complaints and understood the allegations to be true, and therefore had personal

knowledge of them.

The Court can find no factual allegations in the pleadings to support the plausibility of this proposition. Plaintiff does not allege any facts to support the Court in believing Commissioner Hayman received Plaintiff's mailings.[8] The commissioner of a state prison system would have a well-staffed office, and it is highly likely that all but the most important of correspondences were read, processed, and addressed by members of that staff. The commissioner alone could not be realistically expected to keep up with the volume of inmate communications and grievances he received, especially when they concern decisions made several layers of supervision below the Commissioner's level. Plaintiff does not allege, and the Court cannot infer any facts sufficient to support the plausibility of the contention that Commissioner Hayman had personal knowledge of the circumstances alleged in Plaintiff's complaint.[9] While the failure of the Commissioner's office (and the staff member who likely read

---

[8] To factually support the allegation Commissioner Hayman was aware of the violation of Plaintiff's rights Plaintiff could allege, for instance, that he received a response from Commissioner Hayman or, had he sent the letters by registered mail, that he had received a confirmation of delivery.

[9] As the Commissioner accurately notes in his Motion to Dismiss, "under most circumstances it would be regarded as highly unlikely that the commissioner of a state-wide department of corrections would have personal knowledge, and personal involvement, in such relatively commonplace and minute decision-making as cell assignments for one particular inmate, regardless of the constitutional right brought to issue. Plaintiff's allegations do absolutely nothing to show that this case is an exception." (Mot. to Dismiss Pl.'s Sec. Am. Compl. 7.)

Plaintiff's complaint) to respond promptly and appropriately could potentially form the basis for a claim against Commissioner Hayman in his official capacity, it cannot similarly support an action against Commissioner Hayman in his individual capacity.

For a party to be liable in their personal capacity, the Plaintiff must be able to show a deliberate action or inaction that was the moving force behind the injury suffered.  The Court, however, has no pleadings before it to render plausible Plaintiff's claim that Commissioner Hayman was aware of Plaintiff's situation and that, with deliberate indifference, he ignored Plaintiff's communications. As such, the Court finds that Plaintiff has not demonstrated the plausibility of his claims with respect to Commissioner Hayman, and therefore will grant the present motion.

Ordinarily, the Court would not find such an oversight in pleadings made by a pro se prisoner to be sufficient grounds to dismiss a defendant with prejudice. However, this is not the first time Plaintiff has been made aware of Commissioner Hayman's arguments regarding the insufficiency of the pleadings. Almost three months prior to Plaintiff's filing of his second amended complaint [Docket Item 57], Commissioner Hayman filed his original motion to dismiss [Docket Item 35], which was substantively almost identical to the present motion.  Plaintiff thus had notice of the alleged insufficiencies of the pleadings, including that "[t]he amended

14

complaint does not establish that, or how, Hayman was made aware of plaintiff's allegedly being exposed to second-hand smoke from his cellmates". (Mot. to Dismiss Pl.'s Am. Compl. 6).

Within the Third Circuit, it is the preference of the courts to allow curative amendment subsequent to a 12(b)(6) dismissal, unless such amendment would be "inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Here, the Court finds it would be inequitable to allow Plaintiff to further amend his complaint.

Plaintiff was given notice of the alleged infirmities in his pleadings by Commissioner Hayman's first motion to dismiss. In the nearly three months between the filing of that motion and Plaintiff's filing of a motion for leave to amend, Plaintiff had ample opportunity to correct the highlighted infirmities in his amended pleadings. Plaintiff failed to do so, and to allow him the opportunity to file a third set of amended pleadings would only serve to unfairly delay Commissioner Hayman's dismissal from this action. Plaintiff had notice of the insufficiencies, and he chose not to remedy them. To allow him to remedy them now would be to reward him, to the detriment of the moving defendant, for this failure of repeated amendments. Therefore, the dismissal of Commissioner Hayman shall be with prejudice.

**IV.   CONCLUSION**

    For the reasons discussed above, the Court will grant Defendant George Hayman's Rule 12(b)(6) motion to dismiss for failure to state a claim, and will dismiss Defendant George Hayman with prejudice. The accompanying Order will be entered.

| | |
|---|---|
| **July 25, 2012** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE<br>Chief U.S. District Judge |