```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY


KASEEM ALI-X,                      :    HON. JEROME B. SIMANDLE

              Plaintiff,           :    Civil No. 10-4666 (JBS/JS)

     v.                            :
                                        OPINION
GEORGE HAYMAN, et al.,             :

              Defendants.          :
```

APPEARANCES:

Mr. Kaseem Ali-X, pro se
#260516
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Daniel Michael Vannella, Deputy Attorney General
Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendants Karen Balicki, Jester, Fawcett,
    Abbott and Saul


**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

    This matter is before the Court on the motion of Defendants

Karen Balicki, Jester, Fawcett, Abbott and Saul (collectively

"Defendants") for summary judgment. [Docket Item 87.]  Plaintiff

Kaseem Ali-X opposes this motion.[1]  For the reasons discussed

---

[1] Plaintiff filed a request for an extension of time four
weeks after his opposition was due.  The court granted this
untimely request and informed the Plaintiff that no further

below, the court will grant Defendants' motion for summary judgment.

## II.  BACKGROUND

Plaintiff Kaseem Ali-X ("Plaintiff") is a prisoner incarcerated in the New Jersey Department of Corrections ("NJDOC") at the South Woods State Prison ("SWSP").  Plaintiff filed his original complaint on September 13, 2010, and has since filed two amended complaints.  In his Second Amended Complaint, the Plaintiff alleges the Defendants violated his Eighth Amendment rights by failing to protect him from second-hand smoke.[2]  Specifically, the Plaintiff alleges that he was frequently housed with cell mates who, in violation of the NJDOC's smoking policy, smoked inside the cell.  Plaintiff alleges that he complained about the smoking in his cell to Defendants Jester, Fawcett, Abbott and Saul and these Defendants took no action to remedy the situation.  [Docket Item 54.]

---

extensions would be granted.  [DI 94.]  Plaintiff was given a total of 79 days to respond to Defendants' motion for summary judgment and failed to file any opposition. Plaintiff then filed a motion to stay time for response to summary judgment [Docket Item 95] and a second request for extension of time [Docket Item 97].  The court issued an order granting the Plaintiff a further extension of time to file opposition. [Docket Item 100.]  The Plaintiff's opposition was then filed and the Defendant submitted a timely reply.  The motion is now fully briefed and ripe for decision.

[2] The allegations in Plaintiff's Second Amended Complaint are set forth in more detail in this court's July 25, 2012 Opinion [Docket Item 70] and are incorporated herein.

Plaintiff further contends that he suffers from medical conditions which were exacerbated by his exposure to second-hand smoke. Plaintiff claims the Defendants were deliberately indifferent to both the present injury and the future injury caused by exposing him to second-hand smoke in violation of the Eighth Amendment. In addition, Plaintiff brings a common law negligence claim against Defendant Karen Balicki, the Administrator of SWSP, because Balicki allegedly permitted smoking in SWSP and disregarded Plaintiff's argument that tobacco should be considered "contraband" and not allowed in the prison at all.[3] [Docket Item 54.]

The Plaintiff brought suit against the Defendants in their individual capacities and seeks compensatory and punitive damages. The Plaintiff does not seek prospective or injunctive relief. [Docket Item 54.]

The Defendants filed the instant motion for summary judgment seeking to dismiss Plaintiff's claims with prejudice. The Defendants argue they are entitled to summary judgment with regard to Plaintiff's constitutional claims because the Plaintiff failed to exhaust his administrative remedies prior to filing

---

[3] Plaintiff also brought Eighth Amendment claims and tort claims against Defendant George Hayman which were dismissed by this Court in its July 25, 2012 Opinion and Order. [Docket Item 70 and 71.] The Court granted Defendant Hayman's motion to dismiss because the Plaintiff's complaint failed to state a claim against Defendant Hayman.

this lawsuit.  Alternatively, the Defendants argue the Plaintiff has failed to present sufficient evidence to establish his Eighth Amendment claims and they should be dismissed on the merits.  In addition, Defendant Balicki argues she is entitled to immunity under the New Jersey Tort Claim Act, N.J.S.A 59:1-1, et al. ("NJTCA"), and therefore, summary judgment should be granted as to Plaintiff's negligence claim against her.

In opposition, Plaintiff argues that he was blocked from exhausting his administrative remedies because the prison administrators failed to process his grievances.  In addition, Plaintiff maintains that genuine issues of material fact prevent summary judgment on his Eighth Amendment claims.  Finally, Plaintiff maintains Defendant Balicki was grossly negligent by failing to protect him from the hazards of second hand smoke. [Docket Items 98 and 103.]

### III.  DISCUSSION

#### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the

suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

### B. Plaintiff Did Not Exhaust His Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, governs particular aspects of litigation by prisoners during the period of their incarceration.  Specifically, Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

Plaintiff's claims fall within the ambit of the PLRA because he seeks to challenge the conduct of prison officials and the conditions of his confinement, namely his cell assignment to inmates who smoked and his exposure to second hand smoke while confined at SWSP.  See Booth v. Churner, 206 F.3d 289, 294 (3d

Cir. 2000) (holding that suits by prisoners challenging "conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison" fall within the restrictions of the PLRA). Thus, before filing his Eighth Amendment claims in this lawsuit, the Plaintiff was required to exhaust any available administrative remedies. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).

The NJDOC has adopted a two-step grievance procedure known as the Inmate Remedy System, or the IRF system. This procedure provides inmates with an opportunity to make a routine request or request an interview using an Inmate Remedy Form. If the inmate is unhappy with the response to his request, the inmate has the opportunity to appeal the decision or finding. N.J.A.C. 10A:1-4.4. "The decision or finding of the Administrator or designee to the Administrative Appeal is the final level of review and decision or finding of the New Jersey Department of Corrections." N.J.A.C. 10A:1-4.6(d). This two-step process was reviewed and approved by the Third Circuit in Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002).

42 U.S.C. § 1997e(a) "only requires that prisoners exhaust such administrative remedies as are available." Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002). Whether an administrative remedy is available  is a question of law for the court to decide. Id. at 113. When prison officials prevent a prisoner

6

from utilizing administrative remedies, then the remedy is not "available" under Section 1997e.  Id.

Here, Plaintiff argues that he was prevented from utilizing the Inmate Remedy System because prison officials refused to process his grievance forms regarding second-hand smoke and he was prevented from completing the first step of the grievance procedure.  Plaintiff attaches numerous exhibits to his opposition wherein Plaintiff's Inmate Remedy Forms ("IRFs") were returned to him by prison administrators with Corrective Action Forms and not processed.

After reviewing the record, the court finds that NJDOC's IRF system was available to the Plaintiff and the Plaintiff failed to exhaust his administrative remedies.  Specifically, Plaintiff never followed through with the instructions on the Corrective Action Forms in order to resubmit his grievances in compliance with the IRF system.

In this case, the Plaintiff was fully aware of the Inmate Remedy System and understood the process of filing an Inmate Remedy Form and appealing an undesirable finding.  Plaintiff was transferred to SWSP on December 8, 2008 and filed the instant action on September 13, 2010.  (Linen Decl. ¶ 13; Docket Item 1.)  Between December 8, 2008 and September 13, 2010, the Plaintiff submitted a total of 114 Inmate Remedy Forms ("IRFs") that were filed and processed.  (Linen Decl. ¶¶ 7-8, 2-23, 30-35, Exs. E-

7

F.)  Of those 114 IRFs, Plaintiff administratively appealed the initial staff response for seven of them, consequently exhausting his administrative remedies for seven of the 114 IRFs.  (Linen Decl. ¶ 35, Ex. E (#09-01-0259, #09-02-0168, #09-03-0290, #09-03-0607, #09-04-0189), Ex. F (#09-02-226; #09-07-0983).)  None of the seven IRFs that were appealed relate to this matter or dealt in anyway with Plaintiff's cell assignment resulting in exposure to second hand smoke.[4]

Of the 114 processed IRFs filed by the Plaintiff in less than two years, only one IRF related to the subject of second hand smoke.  This IRF was forwarded to a department person on February 3, 2009 and returned to the Plaintiff with a response on February 10, 2009.  The Plaintiff did not appeal the finding.[5]

---

[4] IRF #09-01-0259 involved Plaintiff's request for a vegetarian meal option; IRF #09-02-0168 involved Plaintiff's purchase of defective ear buds from the commissary; IRF #09-03-0290 involved a TV set repair; IRF #09-03-0607 involved an issue with Plaintiff's laundry bag and new man issued clothing; IRF #09-04-0189 involved the Law Librarian's refusal to copy Plaintiff's inmate remedy forms; IRF #09-02-226 involved a policy notification issue; and IRF #09-07-0983 involved another issue with meal substitution.

[5] The Plaintiff submitted this grievance in the form of a letter, not an Inmate Remedy Form.  The original of this letter was not produced as part of the Defendants' exhibits.  However, the Defendants did produce a spread sheet recording a summary of all of Plaintiff's processed grievances.  (Linen Decl. Ex. F.)  This spreadsheet notes, among other things, the subject of the grievance, the form of the grievance, the date the grievance was forwarded to a department person, the date the response was returned to the Plaintiff and whether the Plaintiff filed an appeal.  This spreadsheet is prepared simultaneously by the NJDOC to the remedy forms being filed and processed.  (Linen Decl. ¶

Plaintiff now comes forward with seven additional grievance forms filed by the Plaintiff relating to second-hand smoke. (Pl.'s Exs. 8a, 16a, 18a, 23a, 25a, 29a, 37a.)  All seven grievances seek the same relief - to remove tobacco from the commissary and ban the sale of tobacco products.  These grievances were directed against Karen Balicki, all Medical Department Personnel, or to no specific department or individual. None of these grievances seek reassignment to a non-smoking cell mate or complain that Defendants Jester, Fawcett, Abbott and Saul wrongfully assigned him to a smoking bunk.

All seven of these grievances were returned to the Plaintiff unprocessed and accompanied by a Corrective Action Form ("CAF"). (Pl.'s Exs. 7a, 15a, 17a, 22a, 24a, 24a, 28a, 36a.)  These CAFs informed the Plaintiff that his grievances could not be processed as filed and recommended various courses of action to correct the deficiency.  These corrective actions included: advise housing unit officer/sgt; submit more specific additional information; see Tier Representative about issue; and advise custody staff. Plaintiff avers in his declaration that he contacted his housing unit officers and custody staff about his smoking cellmate and they took no action to reassign his bunk.  However, Plaintiff did not follow through with the grievance procedure and file a

---

8.)  The spreadsheet entry for the second hand smoke grievance indicates this grievance was submitted in the form of a letter, was responded to by a department person and was never appealed.

specific IRF against these officers alleging this misconduct.

By declining to follow the IRF procedure, the Plaintiff has failed to exhaust his administrative remedies. These remedies were available to the Plaintiff and there is no evidence that prison officials prevented the Plaintiff from filing a second grievance which complied with the Corrective Action Forms. See Didano v. Balicki, 488 Fed. Appx. 634 (3d Cir. 2012)(holding prisoner failed to exhaust his administrative remedies when prisoner's grievance form was returned to him with a corrective action form and prisoner failed to proceed with the steps explained in the corrective action form).

The Plaintiff has come forward with no evidence to prove that he exhausted his administrative remedies with regard to Defendants Jester, Fawcett, Abbott and Saul assigning him to a cell with a smoking inmate and ignoring his request to be transferred to a non-smoking cell. Likewise, the Plaintiff has produced no evidence that he proceeded with the steps detailed in the Corrective Action Forms to properly file a grievance against Karen Balicki regarding her enforcement of the smoking policy at SWSP or her refusal to ban the sale of tobacco in the prison.

The Plaintiff was clearly aware of his right and opportunity to file Inmate Remedy Forms as evidenced by the 114 IRFs he filed with SWSP on a wide range of issues. There is no evidence before the court that the Plaintiff did not have the ability to file a

grievance that complied with NJDOC's IRF procedure to address the second-hand smoke exposure alleged in this case.  The Plaintiff's conclusory and self-serving argument that SWSP deliberately covered up his complaints against specific officers for misconduct is without merit and unsupported by the record.  Defendants have disclosed more than 100 processed IRFs filed by Plaintiff and Plaintiff's own exhibits show SWSP informed Plaintiff when his IRF could not be processed and provided CAFs to Plaintiff explaining the deficiencies.  Plaintiff then neglected to follow through with the actions suggested by the CAFs despite being informed of how to file a compliant grievance.

Similarly, the Plaintiff was clearly aware of his right to appeal the findings of the department person responding to his grievance since he successfully appealed seven IRF grievances on various matters.  His failure to appeal the resolution of his single second-hand smoke grievance which was properly filed and processed constitutes a failure to exhaust his administrative remedies.

Consequently, summary judgment is appropriate because the Plaintiff has failed to exhaust his administrative remedies as required by the PLRA.  Accordingly, Plaintiff's Eighth Amendment claims brought against Defendants Jester, Fawcett, Abbott, Saul and Balicki pursuant to Section 1983 must be dismissed and Defendants' motion will be granted.

In addition, Plaintiff's claims for punitive damages against the Defendants will also be dismissed.  In order for a plaintiff in a section 1983 case to qualify for a punitive award, "the defendant's conduct must be, at a minimum, reckless or callous." Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).  Since Plaintiff's underlying 1983 claims are being dismissed with prejudice, Plaintiff's claims for punitive damages must also be dismissed.

Therefore, the Defendants' motion for summary judgment will be granted.

### C.  Defendant Balicki is Immune under the NJTCA

The Plaintiff's only remaining claim is against Defendant Balicki for negligence.  Specifically, Plaintiff claims Defendant Balicki was negligent in failing to protect him from injury from second-hand smoke when the Plaintiff informed Balicki of the definition of contraband and Balicki continued to permit the sale of tobacco "which was being smoked in unauthorized and authorized areas imposing upon Plaintiff's health."[6]  (Pl.'s Sec. Am. Compl.

---

[6] Plaintiff's Second Amended Complaint alleges Defendant Balicki "owed the Plaintiff a duty of reasonable care to protect him from personal injury having knowledge of currently pains and sufferings [sic] with risk of serious future harms" and "breached that duty by failing to provide protection when Plaintiff informed Defendants of the definition of contraband which they are in violation of by selling the harmful hazardous or poisonous chemicals of tobacco which was being smoked in unauthorized and authorized areas imposing upon Plaintiff's health."  (Sec. Am. Compl. ¶¶ 76 and 77.)

¶ 77.) The Plaintiff in essence alleges that Defendant Balicki failed to enact a policy banning tobacco from SWSP or in the alternative, Defendant Balicki failed to enforce the non-smoking policy at SWSP by permitting inmates to smoke in their cells.

The New Jersey Tort Claims Act expressly provides that "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." N.J.S.A. 59:3-5. The New Jersey Supreme Court has explained that this provision of the NJTCA provides absolute immunity to public employees "if [the] conduct giving rise to injury consists only of non-action or the failure to act in the enforcement of the law." Bombace v. Newark, 593 A.2d 335, 338 (N.J. 1991)(finding municipality and municipal employee entitled to absolute immunity under N.J.S.A. 59:3-5 for failure to enforce municipal laws governing smoke detectors and heat even though failure to enforce resulted in tragic death of four children in subsequent apartment fire).

In this case, Plaintiff's claim against Defendant Balicki is that she failed to enforce the laws at the prison regarding smoking in cells and that she failed to enact stricter laws banning tobacco in the prison. Plaintiff's claim under the NJTCA is based solely on Defendant Balicki's failure to act. The NJTCA expressly prohibits this type of claim and provides Balicki with absolute immunity. Consequently, Defendant Balicki's motion for

13

summary judgment will be granted.

**IV.　CONCLUSION**

　　　For the reasons discussed herein, Defendants' motion for summary judgment will be granted.  The accompanying Order will be entered.

**April 16, 2013**　　　　　　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　　　　Chief U.S. District Judge